# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 5:23-bk-00462-MJC |
| LUIS NELSON ACEVEDO, ) | |
| Debtor. ) | Chapter 7 |
| _____ ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Case No._____ |
| ) | |
| LUIS NELSON ACEVEDO, ) | |
| Defendant. ) | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT AND OBJECTION TO DISCHARGE

The United States of America, on behalf of the Social Security Administration (SSA), by and through undersigned counsel, hereby respectfully files its Complaint to Determine Dischargeability of Debt, alleging as follows:

1. This is a core proceeding under 28 U.S.C. § 157(b).

2. This Court has jurisdiction over this matter under the provisions of 28 U.S.C. § 1334.

1

3. Venue is appropriate in the Middle District of Pennsylvania under 28 U.S.C. § 1409.

4. Debtor-Defendant Luis Nelson Acevedo ("Defendant") owes a debt to SSA that the United States, by and through SSA, alleges is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

5. As a creditor in Defendant's underlying Chapter 7 bankruptcy proceeding, the United States has standing to bring a complaint to determine dischargeability of its debt pursuant to 11 U.S.C. § 523(c)(1).

## FACTUAL BACKGROUND

6. In September 2009, Defendant applied for SSA disability insurance benefits (DIB), stating that he had been unable to work since December 12, 2008 due to a disabling condition. Exhibit 1, Application dated September 9, 2009, at 1.

7. To establish entitlement to DIB, Defendant had to show that he was unable to engage in any substantial gainful activity by reason of a medically determinable impairment, which had lasted or could be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

2

8. In March 2010, SSA informed Defendant that he was entitled to monthly DIB payments. Exhibit 2, Notice of Award dated March 7, 2010, at 1. The Notice of Award explained:

> We have enclosed a pamphlet, "What You Need To Know When You Get Social Security Disability Benefits". It will tell you what must be reported and how to report. Please be sure to read the parts of the pamphlet which explain what to do if you go to work or if your health improves.

*Id.*

9. The referenced pamphlet informed Defendant that he was required to inform SSA promptly if he took a job or became self-employed, no matter how little he earned, and that if failed to do so, he would be required to repay any overpayment. Exhibit 3, Pamphlet (SSA Publication No. 05-10153) dated November 2008, at 10-11.

10. Defendant worked an average of 40 hours per week in approximately May 2014 through August 2014 and February 2015 through July 2016, but he failed to inform SSA of that work until SSA confronted him with it in August 2016. Exhibit 4, Defendant's Work Report dated August 28, 2016, at 2.

3

11. In September and October 2015, Defendant falsely told SSA that he was not earning any wages. Exhibit 5, Defendant Statements dated September 16, 2015 and October 27, 2015.

12. Defendant failed to inform SSA of his ongoing work even when SSA specifically reminded him in January 2016 that he was required to tell SSA promptly about any work. Exhibit 6, SSA Notice dated January 2016, at 1.

13. In January 2017, SSA sent Defendant a Notice of Proposed Decision stating that, due to his work, he may not be entitled to DIB for January 2016 through December 2016. Exhibit 7, Notice of Proposed Decision dated January 25, 2017, at 1. This notice also informed Defendant that he could contact SSA within ten days if he had more information that he wanted SSA to consider, *id.*, but he did not contact SSA within that period.

14. Additionally in January 2017, SSA again reminded Defendant that he was required to tell SSA promptly about any work. Exhibit 8, SSA Notice dated January 2017, at 1. Nevertheless, Defendant failed to inform SSA of his 2017 work for Multi-Plastics

4

Extrusions Inc. and Aerotek Affiliated Services Inc. *See* Exhibit 9, Defendant's 2015 – 2022 Earnings Record, at 2.

15. In May 2017, SSA informed Defendant that he had been overpaid $16,453.80 in DIB for January 2016 through December 2016, and that he was required to repay SSA. Exhibit 10, SSA Notice dated May 29, 2017, at 1.

16. In August 2018, Defendant falsely told SSA that he had not worked since February 2017. Exhibit 11, Defendant's Work Report dated August 12, 2018, at 1. In fact, his work at Multi-Plastics Extrusions Inc. ended in the third quarter of 2017. Exhibit 12, Defendant's 2017 Multi-Plastics Extrusions Inc. Earnings Record.

17. In September 2018, SSA sent Defendant a Notice of Proposed Decision stating that, due to his work, he may not be entitled to DIB for January 2016 through September 2017. Exhibit 13, Notice of Proposed Decision dated September 13, 2018, at 1. This notice also informed Defendant that he could contact SSA within ten days if he had more information that he wanted SSA to consider, *id.*, but he did not contact SSA within that period.

18. In October 2018, SSA informed Defendant that he was not entitled to DIB for January 2016 through September 2017. Exhibit 14, Notice of Revised Decision dated October 20, 2018, at 1.

19. In February 2019, Defendant informed SSA that he was willing to repay $300.00 per month to SSA. Exhibit 15, SSA Record dated February 26, 2019.[1]

20. In November 2019, Defendant falsely told SSA that he expected to earn no wages in 2019. Exhibit 16, Application dated November 15, 2019, at 3. In fact, Defendant earned approximately $31,803.00 at Bimbo Bakeries USA Inc. in May 2019 through October 2019. Exhibit 17, Defendant's 2019 Bimbo Bakeries USA Inc. Earnings Record. Defendant did not inform SSA of that work at any time through October 2020.

21. In February 2020, Defendant falsely certified to SSA that he expected no wages in 2020. Exhibit 18, Application dated February 6, 2020, at 3. In fact, by that time, Defendant was working for Graham Packaging Company L.P. Exhibit 19, Defendant's 2020 Graham

---

[1] In this internal SSA record, "NH" is an abbreviation for the "number holder" of Defendant's Social Security number, *i.e.*, Defendant himself.

6

Case 5:23-ap-00029-MJC    Doc 1    Filed 06/29/23    Entered 06/29/23 14:48:37    Desc
Main Document    Page 6 of 10

Packaging Company L.P. Earnings Record. Defendant did not inform SSA of that work at any time through October 2020.

22. On October 15, 2020, SSA sent Defendant a Notice of Proposed Decision stating that, due to his work, he may not be entitled to DIB for May 2019 onwards. Exhibit 20, Notice of Proposed Decision dated October 15, 2020, at 1.

23. On October 28, 2020, an SSA employee spoke to Defendant regarding the above Notice of Proposed Decision, and Defendant told the employee to process the case so that he could apply for benefits for 2020. Exhibit 21, SSA Record dated October 28, 2020.

24. In November 2020, SSA informed Defendant that he was not entitled to DIB beginning May 2019, he was overpaid $28,177.10 since then, and his total debt to SSA was $43,253.40. Exhibit 22, Notice of Disability Cessation dated November 2, 2020, at 1.

25. Following remittances to SSA, Defendant's total overpayment debt to SSA stood at $28,493.60 as of his bankruptcy petition date of March 5, 2023. Exhibit 23, SSA Certification dated May 31, 2023.

# COUNT I
## NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

26. The United States re-alleges each allegation set forth above in paragraphs 1 through 25 as if set forth fully herein.

27. Defendant filed his Petition for Relief under Chapter 7 of the Bankruptcy Code on or about March 5, 2023. Dkt. No. 1. He included SSA as a creditor on his Schedule E/F, Creditors Who Have Unsecured Claims, and stated that he owes SSA $42,953.40. *Id.* at 25. However, SSA has determined that Defendant owes SSA $28,493.60. Exhibit 23 at 1.

28. Defendant now attempts to discharge that debt in bankruptcy. Dkt. No. 1 at 25.

29. A person receiving Social Security disability payments has the duty to promptly report to SSA if their condition improves, if they return to work, or if their earnings increase. 20 C.F.R. § 404.1588.

30. Defendant knew or should have known that he was required to promptly inform SSA of his work activity and earnings, and that his

8

work activity and earnings could affect his eligibility to receive disability benefits.

31. Despite being informed of his reporting responsibilities, Defendant knowingly withheld information from SSA regarding his work activity and earnings from 2014 through 2020.

32. Defendant's work activity and earnings resulted in his receiving benefits to which he was not entitled, and his current overpayment debt to SSA is $28,493.60.

33. Defendant obtained his debt to SSA based on false pretenses, a false representation, or actual fraud, and such debt should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, the United States of America respectfully requests that the Court exempt from discharge Defendant's debt to the Social Security Administration, pursuant to 11 U.S.C. § 523(a)(2)(A) and award the United States such other relief as it deems equitable and appropriate.

                                                GERARD M. KARAM
                                                United States Attorney

                                                s/ Suzanne P. Conaboy
                                                SUZANNE P. CONABOY
                                                Assistant U.S. Attorney
                                                PA ID: 314036
                                                235 N. Washington Avenue
                                                Scranton, PA 18503
                                                (570) 348-2800
Dated: June 29, 2023                Suzanne.Scanlon@usdoj.gov